810 F.2d 201
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Geraldine KEPHART, Plaintiff-Appellant,
v.
Chris WANDSTRADT and City of Covington, Kentucky,
Defendants-Appellees.
 No. 85-5876.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1986.
 
 Before ENGEL, KRUPANSKY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Geraldine Kephart appeals the partial directed verdict and a jury verdict entered in the United States District Court for the Eastern District of Kentucky in her action under 42 U.S.C. § 1983 against the City of Covington, Kentucky, and Chris Wandstradt, one of its police officers, for injuries she sustained when Wandstradt broke into her apartment allegedly to arrest her son for public intoxication.
 
 
 2
 At trial, the primary issues were whether Wandstradt was justified in entering Ms. Kephart's apartment as an officer in hot pursuit of a person suspected of having committed a felony, and whether he used greater force than was necessary under the circumstances. The district court granted a directed verdict in favor of the defendants on the first issue, concluding that Wandstradt had probable cause to believe that Larry Kephart had attempted to break into an automobile. The court reasoned that Kephart had relied solely on the weakness of Wandstradt's testimony and therefore had failed to sustain her burden of proof. The jury returned a verdict in favor of Wandstradt and the City on the remaining issues.
 
 
 3
 On appeal, Kephart contends that the court erred in granting the directed verdict, arguing that Wandstradt's testimony is self-contradictory and therefore raises a question of fact for the jury. She also challenges the court's exclusion of a witness, who she contends would have challenged Wandstradt's credibility. The court had excluded testimony by that witness first because he was not listed on the witness list, and later because proffered testimony would have been too collateral.
 
 
 4
 Upon consideration, a majority of the court is of the opinion that the district judge did not err in directing a partial verdict in favor of the defendant on the issue of probable cause and hot pursuit, and agrees with the reasoning and authorities of Judge Bertelsman whose memorandum opinion is appended hereto.
 
 
 5
 The court further concludes that Judge Bertelsman did not err in excluding the testimony of a priest which was offered by plaintiff not as direct testimony concerning the evidence alleged in the complaint, but only in impeachment of testimony given by defendant Wandstradt on cross-examination and going only to challenge his credibility on a completely collateral matter. We conclude, as did Judge Bertelsman, that such proffered testimony was inadmissible as irrelevant under Fed.R.Evid. 608(b). See also Hanover Fire Ins. Co. v. Dallavo, 274 F.258, 266 (6th Cir.1921); Hug v. United States, 329 F.2d 475, 483 (6th Cir.1964).
 
 UNITED STATES DISTRICT COURT
 EASTERN DISTRICT OF KENTUCKY
 AT COVINGTON
 GERALDINE KEPHART, Plaintiff
 
 6
 vs.
 
 
 7
 CHRIS WANDSTRADT AND CITY OF COVINGTON, KENTUCKY, Defendants
 
 Civil Action 83-181
 Aug. 9, 1985
 MEMORANDUM OPINION
 
 8
 The defendant in this case has been sued under 42 U.S.C. § 1983. Defendant is a police officer for the City of Covington, Kentucky. Plaintiff alleges that defendant caused her injury when he broke the door of her apartment in while pursuing her son.
 
 
 9
 Defendant alleges that he was in "hot pursuit" of plaintiff's son, Larry Kephart, whom he had probable cause to believe had attempted to break into a motor vehicle in a nearby parking lot. It was later discovered that the car belonged to one of Mr. Kephart's companions, but he was convicted of public intoxication.
 
 
 10
 Defendant Wandstradt testified that he had probable cause to pursue plaintiff's son in the belief that a felony was being committed. Plaintiff, on the other hand, put on no proof whatsoever that defendant did not have probable cause but relies on the fact that her son was later convicted only of a misdemeanor.
 
 
 11
 A verdict was directed in defendant's favor on the issues of probable cause and hot pursuit. This memorandum is filed to explain that ruling. Plaintiff has attempted to make her case based on the weakness of the defendant's proof. However, to avoid a directed verdict she must proffer evidence to refute defendant's testimony. This she has failed to do. Bose Corp. v. Consumer Union of United States, Inc., --- U.S. ---- (1984) (wherein the Supreme Court affirmed the Court of Appeals' reversal of a district court's finding for plaintiff where the plaintiff failed to carry its burden of proof and the trial court's finding was based on the weakness in defendant's testimony).
 
 
 12
 The only evidence of what occurred outside the plaintiff's apartment was the testimony of the defendant, who states he had probable cause and was in hot pursuit. If this testimony was disbelieved, as plaintiff contends, there would be no proof on those issues. Thus, the directed verdict.
 
 
 13
 The court is filing this memorandum so that its reasons for granting the partial directed verdict on this issue may be clear in the record.
 
 
 14
 This 9th day of August, 1985.
 
 
 15
 /s/William D. Bertelsman
 
 JUDGE
 
 16
 RYAN, Circuit Judge.
 
 
 17
 I must respectfully dissent from the Court's opinion because it adopts the mistaken reasoning that led the trial court to erroneously direct a "partial verdict" on the issue whether Officer Wandstradt had probable cause to believe that Larry Kephart had committed a felony and therefore probable cause to arrest him following a hot pursuit which included the forcible entry of the plaintiff's apartment building.
 
 
 18
 The trial court's decision to take that question from the jury followed inevitably from the trial court's misconception of the record and erroneous assessment of the state of the proofs.
 
 
 19
 A very careful reading of the whole record of trial, including particularly the testimony of Officer Wandstradt, persuades me that the events observed and described by the officer justified no more than a mere suspicion, indeed according to his own testimony at one point, the mere assumption, and not a reasonable belief based on articulable facts, that a felony was in progress when he came upon Kephart and his companions. But if the question is close, as indeed it is, this Court should defer to the trial court's judgment in the matter, particularly if the closeness of the issue derives from the language, demeanor and apparent sincerity of the testifying officer. I would do so if that were all that the record presents; but it presents much more. The trial court mistakenly concluded that "plaintiff ... put on no proof whatsoever that defendant did not have probable cause, but relies on the fact that her son was later convicted only of a misdemeanor." In that assessment of the record, and of the plaintiff's theory, the learned trial court is mistaken.
 
 
 20
 The plaintiff "put on" virtually all of the evidence in this case bearing upon the issue of Officer Wandstradt's probable cause to believe that a felony had been committed. She called Officer Wandstradt to the witness stand as her witness under Fed.R.Evid 611(c), and produced highly credible evidence that arguably, the officer had no reasonable grounds whatever, based on his own description of the relevant events, to believe that a felony was in progress.[1] In addition, the plaintiff introduced a number of extra-judicial statements made by Officer Wandstradt, given in the course of his pretrial discovery deposition, to the effect that he merely "assumed" that a felony was being committed and pursued Kephart because he had a "suspicion" that a car theft was in progress. That evidence involved no mere reliance "on the weakness of the defendant's proof," as the trial court put it. It was substantive evidence of the defendant's extra-judicial statements offered for substantive purposes as the admissions of a party opponent under Fed.R.Evid. 801(d)(2)(A). Further, the plaintiff produced Officer Wandstradt's testimonial acknowledgement that despite his sworn deposition responses and trial court testimony that he was pursuing Kephart because he believed him to have committed the felony of car theft or theft from a vehicle, Wandstradt did not arrest Kephart for any felony, but only for being drunk in a public place.
 
 
 21
 Nothing in the record explains why, if the officer actually believed that he was pursuing a suspect who had just committed a car tampering felony, he did not arrest him for that offense but instead arrested him for public intoxication--intoxication the officer acknowledged he first observed only at the moment he seized Kephart inside the plaintiff's home. That was, at the very least, circumstantial evidence "put on" by the plaintiff which, when considered together with the officer's trial testimony and pretrial admissions that he entertained a mere "suspicion" and only "assumed" that a car theft was in progress, created a disputed question of fact as to the officer's actual state of mind on the critical probable cause issue.
 
 
 22
 In the penultimate paragraph of its Memorandum Opinion, which is attached to this Court's opinion, the trial court reveals another source for its mistaken conclusion that the probable cause issue should not have been taken from the jury.
 
 The court states:
 
 23
 "The only evidence of what occurred outside the plaintiff's apartment was the testimony of the defendant, who states he had probable cause and was in hot pursuit. If this testimony was disbelieved, as plaintiff contends, there would be no proof on those issues. Thus, the directed verdict."
 
 
 24
 Laying aside the quibble that the testimony of the defendant, who states he had probable cause, was not "[t]he only evidence of what occurred outside the plaintiff's apartment"--the defendant's deposition answers were additional substantive evidence on the point--the trial court's more serious error is its conclusion that if a factfinder were to disbelieve the officer's version of what occurred, there would be no evidence in the record on the matter at all and a "directed verdict" that the officer had probable cause would be the necessary result.
 
 
 25
 That is simply an erroneous conceptualization of the legal effect of the trial court's hypothetical.
 
 
 26
 If a factfinder, for whatever reason, did not believe the officer's testimony that he had probable cause to believe a felony was in progress, and that were the only evidence of what occurred outside the plaintiff's apartment, there would be no proof of probable cause at all and therefore no proof that the officer was justified in smashing down the plaintiff's door, invading her home, and, as she claimed, knocking her to the ground. That being so, not only would a "directed verdict" that the officer had probable cause be unwarranted, the factfinder would very likely be on its way to concluding that the plaintiff's civil rights had been egregiously violated.
 
 
 27
 This record presents a genuine factual issue based upon the testimony of Officer Wandstradt, the substantive evidence of his extra-judicial pretrial admission, and the circumstantial evidence inferable from the fact that the officer arrested Kephart for being drunk, whether the officer actually believed that he had come upon a car theft felony. In addition, it presents a mixed question of fact and law whether, whatever he actually thought, his belief amounted in law to probable cause to arrest the plaintiff's son for a felony. Therefore, the issue should not have been taken from the jury. When it was, the resultant jury verdict was virtually foreordained.
 
 
 28
 I would set aside the verdict and grant a new trial.
 
 
 
 [1]
 Given the limited constituency for which this unpublished opinion is written, I decline to review the testimony line-by-line, but invite the reader to examine the record